```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE



MULTIFOLD INTERNATIONAL)
INCORPORATED PTE. LTD.,)
                       )
        Plaintiff,     )   C.A. Nos. 23-1173-JLH
                       )             23-1323-JLH
v.                     )
                       )
MOTOROLA MOBILITY, LLC,)
                       )
         Defendant.    )



                  Friday, June 14, 2024
                  1:00 p.m.
                  Teleconference



                  844 King Street
                  Wilmington, Delaware



BEFORE:  THE HONORABLE JENNIFER L. HALL
    United States District Court Judge



APPEARANCES:


        McCARTER & ENGLISH, LLP
        BY:  ALEXANDRA M. JOYCE, ESQ.

        -and-

        SCHULTE, ROTH & ZABEL, LLP
        BY:  SAUNAK K. DESAI, ESQ.

                    Counsel for the Plaintiff
```

1    APPEARANCES CONTINUED:

2

3        RICHARDS, LAYTON & FINGER, P.A.
         BY:  SARA M. METZLER, ESQ.

4                    -and-

5        ORRICK, HERRINGTON & SUTCLIFFE, LLP
         BY:  GERALD E. PORTER, ESQ.

6
                        Counsel for Motorola

7

8        MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
         BY:  BRIAN P. EGAN, ESQ.

9        -and-

10       WILLIAMS & CONNOLLY

11       BY:  ANDREW TRASK, ESQ.
         BY:  ADAM D. HARBER, ESQ.

12       BY:  EDWARD J. BENNETT, ESQ.

13                       Counsel for Google

14

15               ----------------------------

16

13:01:16  17           THE COURT:  Hi.  Good afternoon, everyone.

13:01:18  18    We're here on the line in two related cases for discovery;

13:01:24  19    Multifold versus Motorola and Multifold v. Google.  That's

13:01:29  20    civil action numbers 23-1173 and 23-1323.

13:01:37  21           Do we have somebody on the phone for plaintiffs?

13:01:40  22           MS. JOYCE:  Good afternoon, Your Honor.  This is

13:01:42  23    Alex Joyce from McCarter & English on behalf of plaintiffs

13:01:45  24    and I'm joined by Saunak Desai from Schulte, Roth & Zabel.

13:01:52  25           MR. DESAI:  Good afternoon.

| | | |
|---|---|---|
| 13:01:53 | 1 | THE COURT:  Good afternoon.  And do we have |
| 13:01:55 | 2 | somebody for Google? |
| 13:01:56 | 3 | MR. EGAN:  Good afternoon, Your Honor.  This is |
| 13:01:58 | 4 | Brian Egan from Morris Nichols on behalf of Google.  Joining |
| 13:02:02 | 5 | me today are Andrew Trask, Adam Harber and Ed Bennett from |
| 13:02:06 | 6 | Williams & Connolly. |
| 13:02:10 | 7 | THE COURT:  Okay.  And how about Motorola? |
| 13:02:14 | 8 | MS. METZLER:  Good afternoon, Your Honor.  This |
| 13:02:17 | 9 | is Sara Metzler from Richards, Layton & Finger on behalf of |
| 13:02:19 | 10 | Motorola.  Joining me today is Gerald Porter from Orrick |
| 13:02:25 | 11 | can. |
| 13:02:25 | 12 | MR. PORTER:  Good afternoon, Your Honor. |
| 13:02:27 | 13 | THE COURT:  Good afternoon. |
| 13:02:28 | 14 | Okay.  So we've looked at these letters.  I |
| 13:02:32 | 15 | guess we'll hear from defendants first.  And I guess the |
| 13:02:37 | 16 | main question I had is wouldn't this be better to just, once |
| 13:02:44 | 17 | you get the name OF who they want to use, to just have you |
| 13:02:49 | 18 | take a look and let us know if you think that person is a |
| 13:02:53 | 19 | concern and so we'll have something a little bit more |
| 13:02:57 | 20 | specific to go by whether or not youR proposal to have them |
| 13:03:02 | 21 | be on the hook for any violations is something that's |
| 13:03:05 | 22 | reasonable? |
| 13:03:09 | 23 | MR. TRASK:  Good afternoon, Your Honor.  This is |
| 13:03:10 | 24 | Andrew Trask from Williams & Connolly for Google and I'll be |
| 13:03:15 | 25 | presenting for defendants today. |

13:03:16  1          So I understand Your Honor's question, which is

13:03:21  2   whether the kind of predisclosure provision under 7.5 of the

13:03:25  3   protective order is sufficient as to these individuals.  And

13:03:29  4   our position is that it's not.  Certainly it is important to

13:03:34  5   have disclosure of these temporary foreign nationals before

13:03:40  6   they're permitted to view what is defendants' most sensitive

13:03:43  7   business information, but reviewing a CV is insufficient to

13:03:46  8   understand whether or not there may be a protective order

13:03:50  9   violation down the line by one of these individuals.  And as

13:03:53  10  we've explained in the letter brief, there is no recourse

13:03:57  11  for defendants should there be a protective order violation

13:04:01  12  once these individuals leave the country and are no longer

13:04:05  13  subject to the Court's jurisdiction.

13:04:07  14         So the pre-approval process that's built into

13:04:11  15  the protective order proposal is a step in the right

13:04:17  16  direction for defendants, but it doesn't resolve the

13:04:20  17  ultimate issue, which is that these are contractual source

13:04:23  18  code reviewers who are by definition in the United States on

13:04:26  19  a temporary basis and by definition will be leaving the

13:04:30  20  United States and leaving the Court's jurisdiction at some

13:04:33  21  future point in time.  And the pre-approval process simply

13:04:40  22  doesn't inform defendants with sufficient definiteness of

13:04:43  23  whether or not there will be a protective order violation.

13:04:46  24  And of course, if there is, these are the only individuals

13:04:51  25  under the entire protective order who are contemplated to be

13:04:56  1    leaving the country and leaving the Court's jurisdiction.

13:04:59  2    So the fact that there would be a provision particular to

13:05:01  3    these types of individuals is not unreasonable.  This is a

13:05:04  4    special category of individuals under the protective order

13:05:07  5    who plaintiff are seeking to show defendants' most sensitive

13:05:11  6    information to.

13:05:13  7            So hopefully that addresses Your Honor's

13:05:17  8    question on that point.  But as we pointed out in the letter

13:05:21  9    briefs, it's not as if plaintiffs are left without any

13:05:25 10    ability to have individuals with trained technical

13:05:29 11    backgrounds review defendants' source code.

13:05:34 12            Of course Google understands that it has to

13:05:38 13    produce source code should it be ordered by the Court or

13:05:42 14    should the situation develop such that the source code is

13:05:46 15    responsive to defendants' requests and it's a reasonable

13:05:48 16    request under the rules.  And if so, we will understand that

13:05:52 17    that source code can be reviewed by U.S. citizens, even by

13:05:57 18    foreign nationals.  The terms of the order that Google has

13:06:02 19    proposed contemplates foreign nationals reviewing

13:06:06 20    defendants' source code, but only permanent resident foreign

13:06:10 21    nationals who are situated very differently from temporary

13:06:13 22    foreign nationals in that they are permanent residents of

13:06:18 23    the United States and will remain subject to the

13:06:20 24    jurisdiction of the Court.

13:06:21 25            So there are -- it's not as if defendants or

13:06:27  1    Multifold lacks the ability to review this source code.

13:06:29  2    They've acknowledged that there are U.S. citizens and

13:06:33  3    permanent foreign nationals who are employed by this source

13:06:36  4    code review company that they have hired to use, and they

13:06:40  5    haven't provided, frankly, a satisfactory explanation as to

13:06:45  6    whether those individuals can be used to review defendants'

13:06:48  7    source code, should such source code be produced.

13:06:53  8          And but regardless, I think the issue remains

13:06:56  9    that Multifold is just not willing to be responsible for

13:07:00 10    these protective order violations.  I mean, they've

13:07:02 11    acknowledged that these are individuals with whom they have

13:07:04 12    no ongoing relationship, they're temporary consultants,

13:07:08 13    they'll be unaffiliated with Multifold following the

13:07:12 14    disclosure of source code, they're contemplated to be

13:07:15 15    leaving the country and there's just too great of a risk

13:07:19 16    with this case.

13:07:20 17          And one point I think that maybe didn't come out

13:07:23 18    in the letter briefing quite as clearly is that this case,

13:07:27 19    Your Honor, presents somewhat of an unusual scenario.  As

13:07:32 20    Your Honor is aware, this is a large case, there are 16

13:07:35 21    asserted patents and there was a narrowing event a couple of

13:07:38 22    weeks ago where plaintiffs was required to reduce the number

13:07:43 23    of asserted claims, but even following that narrowing event,

13:07:46 24    plaintiffs have maintained that there should be 16 asserted

13:07:47 25    patents in this case and there are still a hundred claims

13:07:51  1    that have been asserted against Google.  On top of that,

13:07:54  2    there are no claim charts attached to the complaint and the

13:07:59  3    allegations in the complaint are extremely vague and wide

13:08:03  4    ranging.  So, for example, with respect to Google,

13:08:09  5    practically every phone that Google has ever made or sold is

13:08:13  6    accused in the complaint.  And it's not just one aspect of

13:08:19  7    the phones, it's their screens, it's their chips, it's their

13:08:21  8    camera applications, it's the Youtube applications called

13:08:25  9    out in the complaint, various other unnamed applications are

13:08:28  10   called out in the complaint.  So this is a large case with a

13:08:31  11   great degree of uncertainty as to what code is actually

13:08:35  12   going to be at issue in the case given where things

13:08:38  13   currently stand.

13:08:39  14          So of course plaintiff cited the Multifold, or

13:08:44  15   excuse me, the *Geoscope* case from the Eastern District of

13:08:48  16   Virginia where there was a protective order in place along

13:08:51  17   the lines of what plaintiffs want to use here, but that was

13:08:54  18   a vastly different case.  There are only six patents at

13:08:57  19   issue here and not nearly the level of ambiguity as to what

13:08:59  20   would be at issue.

13:09:00  21          So to think of this from Google's perspective,

13:09:03  22   this is a case where there is a great deal of ambiguity as

13:09:05  23   to which products are accused, how discovery is going to

13:09:10  24   develop and ultimately should source code be produced, what

13:09:14  25   source code will be at issue.  So the problem here is

13:09:16  1    magnified by the scope and ambiguity of plaintiff's

13:09:19  2    allegations in this case.  So that's a concern here as well

13:09:25  3    with respect to the temporary foreign national issue.

13:09:28  4         The other thing that I wanted to point out to

13:09:32  5    Your Honor is Multifold's briefs cited two other cases from

13:09:37  6    Texas, the *Uniloc* and the *WSOU* cases and argued that Google

13:09:41  7    agreed to similar protective orders in those cases.  That's

13:09:45  8    incorrect, in fact.  Those are cases where Google, in fact,

13:09:50  9    sought a similar export control position just like it's

13:09:55 10    seeking in this case.  Given the nature of the allegations

13:09:59 11    and given the scope of these cases and was simply that the

13:10:03 12    Texas courts declined to implement that provision.  But it's

13:10:05 13    incorrect to say those were agreed-to provisions.  They were

13:10:06 14    not.  And Google advanced export control provisions similar

13:10:11 15    to the ones it's seeking to enter here.

13:10:15 16         And then finally, Your Honor, the plaintiffs

13:10:19 17    cited this case, the *S.I.SV.EL v. Rhapsody* case and argues

13:10:25 18    that it supports their position that one can't seek to

13:10:29 19    preclude foreign nationals from viewing sensitive

13:10:33 20    information, but that case, which is a case from this Court,

13:10:35 21    actually supports implementing this provision here.  So the

13:10:38 22    reason that the export control provision was not adopted in

13:10:42 23    that case is because Judge Burke found that the provision

13:10:45 24    there, which would have barred the released source code to

13:10:49 25    any foreign national, even if within the United States, was

13:10:53  1    too restrictive.

13:10:54  2            That's not what Google is seeking here.  As I

13:10:57  3    noted to Your Honor a few moments ago, Google acknowledges

13:11:01  4    that U.S. citizens and permanent U.S. resident foreign

13:11:06  5    nationals are eligible to view source code should it be

13:11:10  6    produced in this case.  So the position here is simply that

13:11:13  7    the temporary foreign nationals present too great a risk

13:11:17  8    given the wide ranging nature of this case.

13:11:19  9            The *Cisco* case, it had a far broader ask, which

13:11:23 10    was to preclude foreign nationals all together, so that's a

13:11:26 11    distinguishable case.  It also acknowledges citing a case

13:11:30 12    from Judge Stark, the *Graphics Properties v. Baseus* case,

13:11:34 13    the uncertainty about the ability to address the harm of

13:11:37 14    inadvertent disclosure if it occurs outside the jurisdiction

13:11:42 15    of the United States.  That's a quote from the *Cisco* case

13:11:44 16    quoting the *Graphics Properties* case.  That's exactly the

13:11:47 17    harm that Google is concerned about here, the inability to

13:11:52 18    address protective order violations should they occur

13:11:55 19    outside the United States with respect to temporary foreign

13:11:58 20    nationals.

13:11:59 21            So for all those reasons, Your Honor, Google

13:12:02 22    would ask that the protective order attached as Exhibit A to

13:12:07 23    its letter brief be entered.  And then we noted in the brief

13:12:11 24    that's a protective order provision that is consistent with

13:12:14 25    the one entered by Your Honor in the *Samsung* -- in the

13:12:20  1    *Netlist/Samsung* case.

13:12:22  2              And if Your Honor decides that defendants'

13:12:25  3    source code can be viewed by temporary foreign nationals,

13:12:31  4    then the defendants request that the Court enter the

13:12:32  5    protective order attached as Exhibit B to the letter brief,

13:12:35  6    which would hold Multifold responsible for protective order

13:12:39  7    violations by its retained foreign nationals.

13:12:44  8              THE COURT:  All right.  Thanks very much.  Let's

13:12:47  9    hear from the other side.

13:12:49 10              MR. DESAI:  Good afternoon, Your Honor.  This is

13:12:52 11    Saunak Desai on behalf of plaintiff Multifold.

13:12:54 12              Our position is that the defendants bear the

13:12:57 13    burden of showing why these restrictions are necessary both

13:13:00 14    to prevent foreign visa holders from being able to see

13:13:04 15    protected information entirely or to have this initial

13:13:09 16    liability provision, and they haven't met that burden

13:13:12 17    because the proposed restrictions are unnecessary, contrary

13:13:16 18    to the defendants' prior practice and they treat individuals

13:13:19 19    that would otherwise be authorized under the protective

13:13:23 20    order to see confidential information and have access to it

13:13:26 21    but differently based on their immigration status.

13:13:31 22              Your Honor started this with the question that I

13:13:34 23    think makes a lot of sense, which is rather than having a

13:13:39 24    categorical bar on these types of individuals from seeing

13:13:42 25    protected information, that it would make sense that there

13:13:46 1    are already agreed upon disclosure requirements.  There's no

13:13:49 2    question that anyone that would receive access to this

13:13:51 3    information has to be identified, has to be approved by the

13:13:54 4    producing party and if there is an issue that comes up then,

13:14:00 5    then the parties can resolve that and seek intervention from

13:14:04 6    the Court if necessary at a later time.  There's also a

13:14:06 7    number of other protections that are not in dispute.

13:14:09 8    There's no question here that any protected information

13:14:12 9    cannot leave the United States.  That applies to everyone.

13:14:15 10   No one is allowed to view the protected information outside

13:14:18 11   the United States, with some limited exceptions to the

13:14:23 12   extent foreign depositions are necessary.  These protections

13:14:27 13   are sufficient and they've been adopted in prior cases from

13:14:34 14   defendant that defendants have been a part have.  So we had

13:14:37 15   pointed to *Geoscope* case where, again, involved the same

13:14:41 16   counsel involved here.  Google was involved as well, and

13:14:45 17   there was no dispute about including the language that we

13:14:48 18   cited there in Exhibit 3 in paragraph 14 of Multifold's

13:14:53 19   brief where there was no issue that visa holders could see

13:14:58 20   protected information.  And in fact, that language was even

13:15:02 21   broader.  Multifold had agreed to narrow it a bit for this

13:15:06 22   case as well at defendants' request.  Now, defendants will

13:15:09 23   now say that that case is different by making some

13:15:15 24   allegations about the vagueness of Multifold's allegations

13:15:18 25   here in this case and we don't agree that the allegations

13:15:22  1    are vague.  But to be clear, those other Google cases that

13:15:25  2    we cited, including *Geoscope*, those include flagship Google

13:15:30  3    products.  They related to Google location services and

13:15:33  4    Google Maps, and the other cases in which Google's counsel

13:15:36  5    said they didn't agree to not have the language, the *Uniloc*

13:15:42  6    case, but they were -- but actually the Court ordered that

13:15:45  7    protective order over their objections that did not have the

13:15:49  8    provisions they're seeking now, those also included flagship

13:15:52  9    Google products like Youtube and the code for underlying

13:15:56 10    Youtube.  So there's not a distinction here based on the

13:15:59 11    technology at issue.  And in all of these cases Google is

13:16:05 12    stringently trying to protect its protected information.

13:16:08 13    And there's no reasonable way to say that there was some

13:16:12 14    additional protections are necessary here because of the

13:16:15 15    number of patents or the allegations that are in the

13:16:19 16    complaint.  That's untethered from what's actually necessary

13:16:23 17    in the protective order.

13:16:24 18            So we believe that those cases where Google had

13:16:29 19    already agreed to this language or if they didn't agree to

13:16:32 20    it were subject to this language without any identified

13:16:35 21    issue are -- show that this -- that there's no real risk to

13:16:41 22    defendants that would justify imposing the restrictions that

13:16:44 23    they seek here.

13:16:47 24            Separately, they raised a liability issue, but

13:16:51 25    to be clear here, they've suggested that Multifold doesn't

13:16:57  1    trust its reviewers because it doesn't believe that standing

13:17:03  2    in for liability, being on the hook for actions of those

13:17:05  3    reviewers shows that we don't trust them.  To be clear,

13:17:08  4    trust is a separate issue from legal liability.  Multifold

13:17:11  5    does trust its reviewers, but they are reviewers that are

13:17:17  6    retained for a temporary purpose here in litigating this

13:17:20  7    case, for one purpose and to have -- and the protective

13:17:24  8    order maintains confidentiality obligations even after the

13:17:28  9    final disposition of this case.  So we don't believe that

13:17:31 10    having this sort of ill-defined and long lasting liability

13:17:35 11    for those actions really makes any sense.  And in fact, just

13:17:39 12    a way to try to re strict the pool of experts that Multifold

13:17:44 13    can use.

13:17:48 14             So I'm happy to leave it there.  If Your Honor

13:17:51 15    has any further questions, happy to dress them, but I

13:17:54 16    believe that ultimately defendants have not shown why this

13:17:58 17    category of individuals has to be treated per se differently

13:18:01 18    from the outset of this case.

13:18:05 19             THE COURT:  All right.  Thank you very much

13:18:06 20    counsel.

13:18:07 21             So I appreciate both sides' arguments.  Both

13:18:11 22    sides' points are well taken.

13:18:13 23             I'll say at the outset, I'm not really sure that

13:18:18 24    there's ever going to be a dispute here.  So but we're here

13:18:24 25    on the phone today, so I'll tell you what I'll tell you.  I

13:18:27 1    took some notes while everyone was talking and I'll relay

13:18:32 2    those to you now.

13:18:33 3              Google's concerns about -- and Motorola's

13:18:37 4    concerns about the secrecy of source code are very well

13:18:40 5    taken by the Court.  I appreciate that.  And I appreciate

13:18:45 6    this type of evidence is the crown jewel of the company.  I

13:18:50 7    also appreciate defendants' concerns about their ability to

13:18:55 8    enforce the protective order and to get redress for

13:19:01 9    violations of the protective order challenged if there's a

13:19:05 10   particular concern that an individual whose had access is

13:19:09 11   not going to be in the country anymore.

13:19:11 12             I'm not particularly persuaded by plaintiff's

13:19:16 13   argument that defendants should accept plaintiff's proposal

13:19:22 14   because the same parties or the same counsel have agreed to

13:19:26 15   this before.  And I assume to be valid defendants' express

13:19:30 16   concerns about the types of technology and particular

13:19:36 17   concerns they might have about the source code that's going

13:19:42 18   to be disclosed in this case given the type of technology,

13:19:46 19   the number of patents asserted, the scope of the technology

13:19:50 20   covered by the patents and the number of accused products.

13:19:53 21             So all have that said, however, I have

13:19:55 22   discomfort about the categorization of experts proposed by

13:20:00 23   defendants.  And I do think that we can address all of these

13:20:04 24   very valid and serious concerns that the defendants have by

13:20:09 25   utilizing the dispute resolution procedure that's set forth

13:20:14  1   in the portion of the protective order that everyone agrees

13:20:17  2   on, which is in Section 7.5.  And maybe there won't be a

13:20:25  3   dispute and so we'll never have to use it, so we'll just

13:20:29  4   have to go forward and find out.

13:20:30  5            If defendants have a particular concern about an

13:20:33  6   expert either because they're only temporary in the United

13:20:37  7   States or there's some other concern that about this

13:20:44  8   expert's trustworthiness or ability to abide by the

13:20:48  9   protective order or foreign travel, the Court is certainly

13:20:51 10   not ruling out on the phone today that the Court can tell

13:20:58 11   plaintiff that the risk would be too great with this expert

13:21:00 12   and they need to find another expert.  But I want to do that

13:21:04 13   with a record before me, so plaintiffs can argue that this

13:21:07 14   particular individual's got unique expertise and abilities

13:21:11 15   and they really need to use this individual or the defendant

13:21:14 16   can argue there's particular risk with this individual and

13:21:17 17   the Court can make a call.  And maybe that call would be

13:21:21 18   that this expert can't have the information at all.  Or

13:21:25 19   maybe the call would be that the expert can't have this

13:21:27 20   information at all unless plaintiffs agree to be responsible

13:21:31 21   for any violations.  So that's something that I really want

13:21:34 22   to do on a case-by-case basis.

13:21:37 23            So I think you all understand what the basis for

13:21:41 24   my ruling is, but we will go with plaintiff's proposal on

13:21:46 25   this dispute.

13:21:48 1          While I have you all here on the phone, we

13:21:53 2   noticed when we were preparing for today's hearing that

13:21:57 3   there were pending motions on the docket and we got

13:22:01 4   ourselves into a position where we could resolve those for

13:22:05 5   you today.  We could have just put a short oral order on the

13:22:09 6   docket, but we thought as long as we have you all here we

13:22:12 7   could put on the record in more detail the basis for our

13:22:15 8   rulings on these pending motions.

13:22:17 9          So the first motion I'll address is Defendant

13:22:22 10  Google's Motion to Dismiss.  That's on the docket at D.I. 12

13:22:26 11  in case number 23-1323.  That motion will be denied.

13:22:34 12         And I'll put on the record that this is a

13:22:37 13  partial motion to dismiss, so even if the Court fully

13:22:41 14  granted the motion, there would still be counts moving

13:22:44 15  forward.  The complaint in the Google case has got 16 counts

13:22:48 16  and those correspond to 16 patents being asserted by

13:22:52 17  plaintiffs.

13:22:55 18         And so Google hasn't challenged, for example,

13:22:58 19  that the complaint states a claim of infringement (at least

13:23:01 20  direct and induced infringement) for counts 1 to 3, 9, and

13:23:05 21  13 to 16.  So there's no basis to dismiss those counts in

13:23:10 22  their entirety.

13:23:11 23         With respect to counts 4 through 8 and 10

13:23:14 24  through 12 (which correspond to 8 different patents) Google

13:23:17 25  argues that the complaint fails to plausibly allege direct

13:23:22 1   infringement because it "largely parrots claim language and

13:23:26 2   alleges the bare conclusion that Google infringes without

13:23:30 3   providing the factual underpinning that the federal rules

13:23:30 4   require."  I disagree with that argument.

13:23:32 5           As the Federal Circuit made clear in the *Nalco*

13:23:37 6   case, which is at 883 f.3d 1347, and again more recently in

13:23:43 7   the *Bot M8* case, 4 f.4th 1342, plaintiff does not have to

13:23:53 8   prove its case at the pleading stage.  And there's no

13:23:56 9   requirement that the plaintiff plead facts establishing that

13:23:59 10  the each element of the asserted claim is met.  Instead, the

13:24:02 11  complaint must merely place the potential infringer on

13:24:07 12  notice of what activity is being accused of infringement.

13:24:09 13          The complaint here in the Google case identifies

13:24:12 14  the patents, the accused products, and sufficient factual

13:24:16 15  support to put Google on notice of the activity that's being

13:24:19 16  accused of infringement.  And I'll point in particular to

13:24:23 17  paragraphs 90, 94, 107, 116, 117, 130, 143, 154, 181, 194,

13:24:36 18  195, 208, 221, 222, 235, 236, 262, and 275, that cite

13:24:47 19  websites describing some of the accused products.

13:24:50 20          The complaint goes further and identifies, from

13:24:52 21  those webpages, in other paragraphs, certain alleged aspects

13:24:58 22  of the accused products that perform at least some of the

13:25:01 23  requirements of a representative claim for each patent, and

13:25:03 24  it alleges that use of the products perform all of the

13:25:06 25  elements of the claim and says what those elements are.

13:25:09 1          Google identifies Count 4 as exemplary of what

13:25:14 2   it says is the sufficiency of the complaint, which is the

13:25:16 3   failure to allege facts for each element of a representative

13:25:21 4   claim.

13:25:21 5          However, again, the Federal Circuit has said

13:25:24 6   that there is no formal requirement that the plaintiff plead

13:25:27 7   facts establishing that each element of an asserted claim is

13:25:31 8   met.

13:25:31 9          Even so, having reviewed the allegations as a

13:25:34 10  whole, I think there is enough in there to put Google on

13:25:38 11  notice about how the limitations that Google has identified

13:25:41 12  is problematic are alleged to be met.

13:25:45 13         For example, Google says there's not enough in

13:25:48 14  Count 4 to plausibly allege that the accused products

13:25:52 15  display an overlay control that can be actuated which

13:25:56 16  results in dismissal of the full screen mode.  I disagree.

13:25:59 17  The complaint alleges in paragraph 130 that an overlay

13:26:02 18  control can be displayed by the device by a user pressing a

13:26:06 19  screen and when the user presses the screen, it dismisses

13:26:09 20  the full screen media.  Google may dispute that its products

13:26:15 21  have the claimed overlay control, but there is enough in the

13:26:18 22  complaint to understand what the accused activity is.  I've

13:26:21 23  looked at the other limitations cited by Google for the

13:26:23 24  other challenged counts and I reach the same conclusion as

13:26:27 25  to those.  Again, Google may dispute that its products have

13:26:31  1    those elements or that the use of its products meets those

13:26:35  2    method claim elements, but the complaint puts Google on

13:26:38  3    notice of what activity is being accused of infringement.

13:26:41  4           Google next says that the same count 4 through 8

13:26:44  5    and 10 through 12 fail to allege induced infringement for

13:26:48  6    the reason that they don't adequately allege direct

13:26:51  7    infringement; however, as I just stated, I do think they

13:26:54  8    adequately allege direct infringement.

13:26:57  9           Google next argues that none of the counts

13:26:59 10    adequately allege contributory infringement.  But again,

13:27:03 11    that's not a basis to dismiss any of the counts, which also

13:27:07 12    allege direct and induced infringement, but the counts are

13:27:11 13    moving forward.  Moreover, the complaint alleges that Google

13:27:14 14    sells components of the accused products that the complaint

13:27:18 15    adequately alleges are directly infringed.  Under these

13:27:22 16    circumstances, that is enough.  At this stage I'm not going

13:27:25 17    to cut out the contributory infringement allegations from

13:27:28 18    the case at this pleading stage.

13:27:30 19           And to require anything more at this stage with

13:27:34 20    respect to the infringement allegations would require the

13:27:36 21    equivalent of infringement contentions, which is more than

13:27:40 22    the law demands.

13:27:41 23           And so Google's motion will be denied.  I will

13:27:44 24    note, though, that we have a scheduling order already

13:27:50 25    entered in this case that requires plaintiff to provide its

13:27:53  1    initial infringement contentions in the form of claim charts

13:27:55  2    less than two months from now.  And as plaintiff itself

13:27:59  3    admits, these are not complicated claims, so plaintiff

13:28:03  4    should be able to explain what its infringement theories are

13:28:05  5    in those claim charts.  If plaintiff doesn't have a theory

13:28:10  6    or has a frivolous theory and plaintiff is using that theory

13:28:11  7    or non theory to try to get more discovery than it would

13:28:15  8    otherwise be entitled to get, the Court will address that at

13:28:18  9    the appropriate time.

13:28:19  10           Turning next to Motorola's pending motion to

13:28:23  11   dismiss.  That's at document 10 in 23-1173.

13:28:30  12           Motorola argues that "every claim on every

13:28:33  13   infringement theory - direct, contradictory, induced, and

13:28:36  14   willful - represent just a type of 'threadbare recitals of

13:28:42  15   the elements of a cause of action, supported by mere

13:28:46  16   conclusory statements' precluded by Iqbal Twonbley."  I

13:28:50  17   disagree.

13:28:51  18           Here again, plaintiffs identify its patents,

13:28:56  19   accused products and sufficient factual support to put

13:28:58  20   Motorola on notice of the activities being accused of

13:29:02  21   infringement.

13:29:02  22           As in the Google complaint, plaintiff cited a

13:29:05  23   number of webpages disclosing several limitations.  I won't

13:29:09  24   cite them all, but they include paragraphs 94 and 98, 120,

13:29:14  25   and others.

13:29:16  1              Like the Google complaint, the Motorola

13:29:19  2      complaint goes further and, each count when read as a whole,

13:29:23  3      adequately identifies certain alleged features of the

13:29:28  4      accused product that perform at least some of the

13:29:32  5      requirements of a representative claim, and the complaint

13:29:34  6      also alleges that use of the products perform all of the

13:29:37  7      elements of the claim (and it sets forth what all of those

13:29:44  8      elements are).

13:29:45  9              Requiring anything more at this stage, again,

13:29:47 10      would be essentially requiring infringement contentions

13:29:49 11      which aren't required at the motion to dismiss stage.

13:29:53 12              Motorola next argues that the direct

13:29:55 13      infringement allegations based on method claims should be

13:29:58 14      dismissed because you can only directly infringe a method

13:30:02 15      claim by performing the method, not by selling a product

13:30:07 16      that can perform the method.

13:30:08 17              And that's an accurate statement of the law.  I

13:30:11 18      don't think anyone disputes that, but that is not a basis to

13:30:12 19      dismiss the count here, because, for one thing, each count

13:30:16 20      alleges that Motorola has directly infringed by itself

13:30:20 21      performing the claimed method and that it induces others to

13:30:24 22      infringe.  The Court is not going to parse out various

13:30:27 23      theories at this stage under these circumstances.

13:30:30 24              Motorola argues that the Court should separately

13:30:33 25      dismiss the allegations for contributory, induced and

13:30:36  1    willful infringement.

13:30:37  2            With respect to contributory infringement,

13:30:39  3    Motorola makes essentially the same argument as Google, and

13:30:43  4    I also reject that for the same reason.

13:30:46  5            With respect to induced infringement, Motorola

13:30:51  6    says that the complaint fails to allege specific intent.

13:30:51  7    The gist of its argument here is that there's not enough

13:30:56  8    connecting the alleged direct infringement by the customer

13:30:56  9    to an action taken by Motorola.  I disagree under these

13:31:01 10    circumstances.

13:31:01 11            Given the nature of the allegations, which is

13:31:05 12    that the accused products have certain functionality that

13:31:08 13    infringes when it's used by the customer, the complaint's

13:31:12 14    allegation that Motorola sells the products and provides

13:31:15 15    instructions and support on how to use them is enough.

13:31:19 16            Finally, Motorola argues that "the willful

13:31:22 17    infringement claim should be dismissed because the complaint

13:31:25 18    fails to allege any sufficiently egregious acts" beyond

13:31:29 19    typical infringement.

13:31:31 20            At this stage of a patent case, and in

13:31:34 21    particular this case with the record before the court, it

13:31:37 22    would be inappropriate for the Court to determine whether

13:31:39 23    this is merely a typical infringement or an egregious

13:31:44 24    infringement.  So I'm not going to dismiss any counts or

13:31:47 25    strike any theories on that basis.

13:31:49  1            And that concludes my rules on those two pending

13:31:52  2   motions.

13:31:53  3            I hope everyone has a great weekend.  Bye bye.

13:31:58  4            (Court adjourned at 1:31 p.m.)

5

6

                        ----------------------------------

7

8

9            I hereby certify the foregoing is a true and
      accurate transcript from my stenographic notes in the
      proceedings.

11                              /s/ Stacy M. Ingram, RPR
                                Official Court Reporter
12                                U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25